UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>Unity School District</u>,
    Plaintiff

    v.                                    Case No. 15-cv-155-SM
                                          Opinion No. 2016 DNH 062
<u>Vaughn Associates, Inc.,</u>
<u>and Scott Vaughn</u>,
    Defendants

    v.

<u>School Administrative Unit #6,</u>
<u>Excel Mechanical, Inc.,</u>
<u>Superior Walls of Hudson Valley, Inc.,</u>
<u>and Town of Unity</u>,
    Third-Party Defendants

<u>**O R D E R**</u>

    This case arises from two contracts between the Unity School
District and Vaughn Associates, Inc., pursuant to which Vaughn
Associates agreed to design and, subsequently, oversee
construction of a new elementary school in Unity, New Hampshire.
Those contracts were terminated in early 2014, and this
litigation ensued.  Initially, the Unity School District filed a
four-count writ in state court against Vaughn Associates and its
principal, Scott Vaughn (collectively, "Vaughn").  Vaughn then
removed the action to this court, on grounds that the parties are
diverse.  Subsequently, it filed a ten-count third-party
complaint against several entities, none of which was a party to
its contracts with the Unity School District.

Two of those third-party defendants – the Town of Unity and
School Administrative Unit #6 – now move to dismiss all claims
advanced against them, asserting that none states a viable cause
of action.  See generally Fed. R. Civ. P. 12(b)(6).  Vaughn
objects.  For the reasons discussed, those motions are granted.


## Standard of Review

When ruling on a motion to dismiss under Rule 12(b)(6), the
court must "accept as true all well-pleaded facts set out in the
complaint and indulge all reasonable inferences in favor of the
pleader." SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010).
Although the complaint need only contain "a short and plain
statement of the claim showing that the pleader is entitled to
relief," Fed. R. Civ. P. 8(a)(2), it must allege each of the
essential elements of a viable cause of action and "contain
sufficient factual matter, accepted as true, to state a claim to
relief that is plausible on its face," Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (citation and internal punctuation omitted).


In other words, "a plaintiff's obligation to provide the
'grounds' of his 'entitlement to relief' requires more than
labels and conclusions, and a formulaic recitation of the
elements of a cause of action will not do." Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 555 (2007).  Instead, the facts alleged in

2

the complaint must, if credited as true, be sufficient to "nudge" plaintiff's claims "across the line from conceivable to plausible." Id. at 570. If, however, the "factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Tambone, 597 F.3d at 442.

## Background

Accepting the allegations of the third-party complaint as true - as the court must at this juncture - the relevant facts are as follows. In 2009, the New Hampshire Department of Education voted to close the Town of Unity's elementary school because it failed to comply with state building, fire safety, and educational requirements. In 2010, Scott Vaughn volunteered to donate his design services to assist the Unity School District in preparing a proposal to construct a new elementary school and to secure voter approval of a bond to fund the project.

In August of 2010, that bond was approved by the voters of the school district. Subsequently, the Unity School District entered into an Architectural Services Contract with Vaughn Associates, under which Vaughn Associates agreed to design the new elementary school. Shortly thereafter, the Unity School District entered into a second contract with Vaughn Associates,

pursuant to which Vaughn Associates would act as the project's
construction manager.  Once the project got underway, however, it
was plagued by difficulties and delays.  Eventually, in January
of 2014, Vaughn Associates resigned as construction manager and,
approximately two months later, it sent notice to the Unity
School District terminating the Architectural Services Agreement.
In terminating that contract, Vaughn Associates cited
"impracticability, frustration of purpose, lack of good faith and
fair dealing, and non-payment."  Third-Party Complaint (document
no. 8) at para. 125.

In March of 2015, the Unity School District filed suit in
state court against Vaughn Associates, Inc. and Scott Vaughn,
advancing claims of negligence, breach of contract, negligent
misrepresentation, and violations of New Hampshire's Consumer
Protection Act.  Vaughn removed the action, invoking this court's
diversity subject matter jurisdiction.  See generally 28 U.S.C.
§ 1332.  And, as noted above, Vaughn subsequently filed a ten-
count third-party complaint against School Administrative Unit #6
("SAU #6"), Excel Mechanical, Inc., Superior Walls of the Hudson
Valley, and the Town of Unity, New Hampshire.

Pending before the court are motions filed by SAU #6 and the
Town of Unity, seeking dismissal of all claims asserted against

4

them.  Counsel for the parties presented their arguments in legal memoranda, as well as at a hearing before the court on December 1, 2015.

### Discussion

Before addressing the specifics of the pending motions to dismiss, it probably bears noting that, with the exception of its claim against the Town of Unity for intentional interference with contractual relations, Vaughn does not seek to recover damages for actual losses or injuries it sustained.  Instead, Vaughn seeks contribution or, better still, complete indemnification from both the Town and SAU #6 for harms sustained by the <u>Unity School District</u> and any damages Vaughn may, in the future, owe to the Unity School District.  <u>See, e.g.</u>, Third-Party Complaint at paras. 138, 144, 205, and 212.  Vaughn has clearly, repeatedly, and unambiguously proclaimed that it is (with the one exception noted above) pursuing claims for contribution and implied indemnification.  Accordingly, its claims must be treated as such (despite allegations in the third-party complaint that might suggest Vaughn is pursuing the third-party defendants for harm <u>it</u> suffered as a consequence of their allegedly tortious conduct).

I.   <u>Claims Against SAU #6</u>.

Vaughn advances two claims against SAU #6: one for statutory contribution, pursuant to N.H. Rev. Stat. Ann. ("RSA") 507:7-f (count one); and one for common law indemnity (count two). Third-Party Complaint at paras. 138 and 144.  <u>See also</u> Vaughn's Memorandum in Opposition (document no. 30-1) at 2-3 ("[Vaughn's] Third-Party Complaint against SAU seeks contribution and/or indemnity for the actions of SAU which caused or contributed to the Project issues and delays.").  The New Hampshire Supreme Court has explained the distinction between contribution and indemnification as follows:

> [I]ndemnity is distinguished from contribution because whereas <u>indemnity shifts the entire burden of loss</u> from one tortfeasor who has been compelled to pay it, to another whose act of negligence is the primary cause of the injured party's harm, <u>contribution is partial payment</u> made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party.

<u>Gray v. Leisure Life Indus.</u>, 165 N.H. 324, 330 (2013) (citations and internal punctuation omitted) (emphasis supplied).

A.   Count One - Statutory Contribution.

In count one of its third-party complaint, Vaughn asserts that SAU #6: (a) negligently prepared "financial, programming, educational specification and preliminary design data" upon which Vaughn relied in formulating its cost and budgetary estimates,

id. at para. 131; (b) negligently failed to provide Vaughn with a
geotechnical report in a timely manner, which forced Vaughn to
revise its budget estimates; and (c) employed a "poor and
untimely payment process," id. at para. 137 – all of which
"cause[d] delays or otherwise constitue[d] an impediment to the
project." Id. at para. 143.  Accordingly, says Vaughn:

> To the extent [Vaughn] is liable to [Unity School
> District] for negligence or for any other tort-based
> recovery (which [Vaughn] denies in all respects), SAU
> #6 is responsible to [Vaughn] for the amount of its
> proportionate liability pursuant to RSA 507:7-f.

Id. at para. 138 (emphasis supplied).[1]


There are, however, fundamental problems with that claim.
First, the third-party complaint does not allege that SAU #6 owed
and breached any cognizable common law duties that proximately
caused the injuries for which Unity School District seeks
compensation.  In other words, Vaughn has failed to allege
sufficient facts to suggest that SAU #6 is a joint tortfeasor
that should be held to account for its proportionate share of
Vaughn's liability to the School District.  Instead, Vaughn
alleges that it has suffered some vague, potentially contingent,

---

[1]      RSA 507:7-f provides that, subject to certain specific
conditions, "a right of contribution exists between or among 2 or
more persons who are jointly and severally liable upon the same
indivisible claim, or otherwise liable for the same injury, death
or harm."

harm as a consequence of having relied upon inaccurate information allegedly provided by SAU #6 and because SAU #6 allegedly employed "a poor and untimely payment process."  Simply stated, Vaughn's claims do not give rise to a viable cause of action for statutory contribution; even charitably construed, the third-party complaint fails to state a viable basis for finding SAU #6 was a joint tortfeasor (i.e., breached a recognized common law duty) that proximately caused the damages for which Unity School District seeks compensation from Vaughn.  See Leisure Life Indus., 165 N.H. at 330 ("contribution is partial payment made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party.") (emphasis supplied). See also Restatement (Third) Torts: Apportionment Liab. § 23 (Am. Law. Inst. 2000) (noting that the party seeking contribution must demonstrate that the party from whom it seeks contribution proximately caused the plaintiff's injuries).

Moreover, even if Vaughn had alleged the elements of a viable contribution claim under New Hampshire statutory law, this action is not the proper vehicle by which to pursue that claim. The court has previously discussed this issue in detail, see Connors v. Suburban Propane Co., 916 F. Supp. 73 (D.N.H. 1996), and that analysis need not be repeated.  It is sufficient to note that the court concluded:

8

> Because its use to implead third-party contribution
> defendants would violate the Rules Enabling Act (by
> limiting plaintiffs' and enlarging defendant's
> substantive rights under applicable state law), Fed. R.
> Civ. P. 14 cannot be invoked, without plaintiffs'
> consent, to bring a contribution action premised on
> N.H. Rev. Stat. Ann. § 507:7-f & g against a third-
> party defendant in this diversity action.

Id. at 81.  Because the plaintiff in this action - Unity School

District - has not consented to Vaughn's efforts to pursue a

statutory contribution claim against SAU #6 as a third-party

defendant, that claim (even if properly pled) cannot be advanced

here.  See RSA 507:7-g IV(c) ("If and only if the plaintiff in

the principal action agrees, a defendant seeking contribution may

bring an action in contribution prior to the resolution of the

plaintiff's principal action, and such action shall be

consolidated for all purposes with the principal action.").


    B.    Count Two - Common Law Indemnity.

    New Hampshire common law recognizes three distinct types of

indemnity: derivative or imputed by law, express, and implied.

See Leisure Life Indus., 165 N.H. at 327.  Here, Vaughn is

pursuing an implied indemnity claim.   See Vaughn Opposition

Memorandum at 12.  The problem Vaughn faces, however, is that

"under New Hampshire law, a right to indemnification is rarely

implied." Johnson v. Capital Offset Co., No. 11-CV-459-JD, 2013

WL 5406619, at *8, 2013 DNH 127 (D.N.H. Sept. 25, 2013) (citation

omitted).  According to the New Hampshire Supreme Court, "This disinclination [to infer an indemnification obligation] reflects a simple notion founded in pragmatism and fairness, that those who are negligent should bear responsibility for their negligence."  Dunn v. CLD Paving, Inc., 140 N.H. 120, 123 (1995) (citation and internal punctuation omitted).

Nevertheless, the Supreme Court of New Hampshire has recognized that, under limited circumstances, one party may have an implied obligation to indemnify another.  So, for example, the court has held that it might be appropriate to find an implied indemnification obligation when one party sells a product that contains a defectively-designed or defectively-manufactured component.  If the plaintiff's injuries arise solely from that defective component, and if the seller's only negligence was in failing to discover that defect, the seller might have a viable claim against the product's manufacturer for implied indemnification.  See Jaswell Drill Corp. v. General Motors Corp., 129 N.H. 341, 346 (1987).  Alternatively, the court has recognized that:

> [A]n implied agreement to indemnify may exist when an indemnitor performs a service under contract negligently and, as a result, causes harm to a third party in breach of a nondelegable duty of the indemnitee.

10

<u>Leisure Life Indus.</u>, 165 N.H. at 328.  Plainly, however, the
facts of this case are distinguishable from those in both <u>Jaswell</u>
and <u>Leisure Life</u>.  SAU #6 (the indemnitor) had no contract with
Vaughn, nor did it supply Vaughn with a defective product for use
in the design or construction of the new school.  Moreover, the
third-party complaint fails to allege how SAU #6's allegedly
wrongful conduct harmed Unity School District (the third party)
in breach of a duty owed by Vaughn (the indemnitee).

According to the third-party complaint, SAU #6 should be
required to indemnify Vaughn for any liability Vaughn may have to
the Unity School District because:

> SAU #6 knew or should have known that [Vaughn] would
> rely on its budgetary data as it constructed the new
> Unity elementary school;
>
> SAU #6 knew or should have known that its data was
> flawed;
>
> SAU #6 took no steps to ensure its data was accurate or
> to correct its data in a timely manner; and
>
> SAU #6 knew or should have known that its failure to
> timely process payment requests and/or reimbursement
> requests would cause delays or otherwise constitute an
> impediment to the project.

Third-Party Complaint at paras. 140-43.  But, the third-party
complaint does not link any of that allegedly wrongful conduct to
harm suffered by Unity School District.  In other words, the
third-party complaint fails to allege sufficient facts to warrant

11

the conclusion that SAU #6's "negligence [was] the primary cause of the injured party's harm," <u>Leisure Life Indus.</u>, 165 N.H. at 330, and, therefore, that SAU #6 should be required to indemnify Vaughn.  The allegedly inaccurate "budgetary data" provided by SAU #6 was relied upon by voters in approving the $4.7 million bond and the supplemental $550,000 bond.  <u>See</u> Third-Party Complaint at paras. 28, 37, and 90.  And, according to Vaughn, SAU #6's alleged failure to process payment requests in a timely manner harmed Vaughn (which says it stepped in to make those payments), not the School District.  <u>See</u> <u>Id.</u> at paras. 91-95.

While the Third-Party Complaint is confusing, this much is plain: it fails to allege facts sufficient to support the rarely-recognized common law claim for implied indemnification against SAU #6.

II.  <u>Claims Against the Town of Unity</u>.

A.  Count 11 (Contribution) and Count 12 (Indemnification).

Largely for the reasons set forth above, Vaughn's third-party claims against the Town of Unity fail to state viable causes of action for either statutory contribution or implied indemnification.

B.   Count 10 - Intentional Interference with Contract.

To set forth the essential elements of a viable claim for intentional interference with contractual relations, the third-party complaint must plausibly allege that: (1) Vaughn had an economic relationship with Unity School District; (2) the Town of Unity was aware of that relationship; (3) the Town of Unity intentionally and improperly interfered with that relationship; and (4) Vaughn was damaged by such interference.  Hughes v. N.H. Div. of Aeronautics, 152 N.H. 30, 40-41 (2005).  The Town of Unity asserts that the third-party complaint fails to adequately allege both the third and fourth elements.

 With regard to the third element, "[o]nly improper interference is deemed tortious in New Hampshire."  Roberts v. General Motors Corp., 138 N.H. 532, 540 (1994) (emphasis in original).  And, in determining whether an actor's conduct was "improper," the New Hampshire Supreme Court has held that consideration must be given to several factors, including the nature of the actor's conduct, his or her motives, and the interests advanced by the actor.  See Id., at 540-41 (quoting Restatement (Second) of Torts § 767 (Am. Law. Inst. 1979)).  Finally, of course, Vaughn must allege facts sufficient to permit the reasonable inference that conduct attributable to the Town

13

proximately caused the damages for which Vaughn seeks
compensation.

Turning to the facts pled in the third-party complaint,
Vaughn alleges that:

> The Town allowed its employees, elected officials
> and/or agents to use their positions in an abusive
> manner to fight the new Unity Elementary School
> Project.
>
> The Town knew or should have known that the new Unity
> Elementary School Project was vital to the continued
> success of the Town and yet, through its agents, it
> sought without justification to delay or defeat the
> project.
>
> As a result of the conduct of the Town, the contractual
> relationship between [Vaughn] and [Unity School
> District] became frayed.
>
> Ultimately, as a result of the conduct of the Town,
> [Vaughn] had to terminate its contract with [Unity
> School District].
>
> The actions of the Town, by and through its agents,
> constitute intentional interference with an
> advantageous business relationship.
>
> As a result of the interference of the Town, [Vaughn]
> has suffered damages, costs and loss of reputation.

Third-Party Complaint at paras. 197-202. In support of that
claim, Vaughn alleges that employees and agents of the Town
(e.g., the Fire Chief and Building Inspector), as well as a
"strong, vocal 'anti-tax' element in the Town," id. at paras 21,
61, 96, working with the State Fire Marshal, sought to impose

14

additional (costly and time-consuming) requirements on the project.  See, e.g., Id. at para. 66-68 ("For example, the Fire Chief insisted that the parking lot design incorporate the ability to park two ladder fire trucks side-by-side directly adjacent to the school building.  This was in excess of the access requirements contained in the fire code.  The necessary upgrade to the parking lot essentially required that it be designed on par with components of a major highway thereby significantly increasing the costs of construction.").  See also Id. at para. 96 ("In the mean time, members of the anti-tax element of the Town (inside and outside of the Town government) continued to contact the [State Fire Marshal] pointing out alleged deficiencies in the building design and construction.").

According to Vaughn, the issues raised by agents of the Town "were largely, if not completely fabricated and constituted nothing more than an attempt to use the [State Fire Marshal] as a tool to stop or delay construction of the school."  Id. at para. 98.  Yet, Vaughn seems to claim that the Town somehow "forced" it to comply with those fabricated, unreasonable, and unjust demands by modifying the design elements of the school and/or its construction techniques, and thereby proximately caused Vaughn to suffer damages.

What Vaughn has failed to identify (either in its legal memoranda or at oral argument), and what the third-party complaint lacks, is some causal connection between the alleged conduct of the Town's employees/agents and the harm Vaughn claims to have suffered.  At oral argument, counsel for Vaughn stated that when Vaughn received "fabricated," "unreasonable," and "unjust" demands (from individuals not party to its contracts) to alter the specifications of the architectural drawings, construction techniques, or building materials, it simply acquiesced to those demands in an effort to appease opponents of the project and to maintain a good relationship with its principal, the Unity School District.  And, in the process, it incurred substantial additional costs.  That, in turn, caused its relationship with the Unity School District to become "frayed."

But, it is important to remember that Vaughn had two contracts with the Unity School District: first, an Architectural Services Contract, by which it agreed to design the proposed elementary school, Third-Party Complaint at 39; and, second, a contract pursuant to which Vaughn agreed to act as the project's construction manager, id. at para. 43.  As was discussed at length at oral argument, when faced with opposition from members of the public and demands from the building inspector, fire chief, and state fire marshal, for design or construction

16

changes, Vaughn perhaps should have presented those matters to
the client for decision.  Vaughn could have turned to its client
– the Unity School District – and explained that it would
certainly make the requested changes, so long as the client
agreed and executed a change order assuming responsibility for
the additional costs and resultant delays.  Instead, Vaughn
apparently acquiesced, and made the changes requested by third
parties, no doubt expecting that those changes could be
implemented within the existing budget and time requirements.
But, to claim that the Town somehow unlawfully "forced" Vaughn to
unilaterally make design and construction changes is not
plausible.  Nor is it plausible to say that the alleged conduct
on the part of the Town's employees and agents amounted to
unlawful interference with Vaughn's contractual relationship with
the Unity School District.  It is as if a neighbor demanded that
the School District construct an abnormally high fence around the
school's playground and, for reasons satisfactory to Vaughn, it
unilaterally agreed to do so.  Then, after the School District
sued Vaughn for cost overruns and delays, Vaughn sued the
neighbor for intentional interference with contractual relations.
Few would think that Vaughn had a viable claim.

    The Town's citizens, employees, and agents were of course
free to demand that the School District and Vaughn design and

17

oversee construction of an elementary school more to their liking, if they so chose.  But in the face of such demands, Vaughn had a contractual remedy: seek agreement and appropriate change orders from the Unity School District, or simply refuse to meet the demands of interested non-parties to the controlling contracts.  Having apparently elected a third course of action – to unilaterally make the requested changes to the final design and/or construction methods for which the Unity School District contracted – Vaughn cannot now seek to recover its losses from the Town on a theory of intentional interference with contractual relations.

In short, the third-party complaint lacks plausible allegations that wrongful conduct of the part of the Town, its employees, and/or its agents improperly interfered with Vaughn's obligation to honor its own contractual relationship with Unity School District and, thereby, proximately caused harm to Vaughn. Even assuming, as Vaughn alleged at oral argument, that the demands made upon it by the Town's agents were "intentionally excessive [and made] for the purposes of killing the project," see Draft of Oral Argument Transcript at 18, such conduct does not, under the circumstances presented, give rise to a viable claim for intentional interference with contractual relations. Vaughn had the contractual obligation to refuse to make requested

18

modifications, or to first obtain the School District's agreement and appropriate change orders.  It did neither.  It cannot now complain that the costs associated with its voluntary assumption of obligations outside the contracts must be borne by the Town.

### Conclusion

For the foregoing reasons, as well as those discussed at oral argument and in the memoranda submitted by the third-party defendants, the motions to dismiss filed by the Town of Unity (document no. 13) and School Administrative Unit #6 (document no. 24) are granted.  Counts 1, 2, 10, 11, and 12 of the Third-Party Complaint are dismissed.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

March 23, 2016

cc:   Jerrol A. Crouter, Esq.
      Keriann Roman, Esq.
      Demetrio F. Aspiras, III, Esq.
      Kenneth B. Walton, Esq.
      Michael E. Coghlan, Esq.
      Andrew B. Livernois, Esq.