UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Unity School District,
     Plaintiff

     v.                              Case No. 15-cv-155-SM
                                     Opinion No. 2017 DNH 013
Vaughn Associates, Inc.,
and Scott Vaughn,
     Defendants

     v.

Excel Mechanical, Inc., and
Superior Walls of Hudson Valley, Inc.,
     Third-Party Defendants

**O R D E R**

     In 2010, the Unity School District entered into two

contracts with defendants, Vaughn Associates and Scott Vaughn

(collectively, "Vaughn"), to design and oversee construction of

a new elementary school in Unity, New Hampshire.  What was

originally supposed to be a $4.7 million project ballooned into

one exceeding $9 million.  The contracts between the parties

were terminated in early 2014, and the School District

eventually brought this action.  The District advances four

claims: professional negligence (i.e., architectural

malpractice); breach of contract; negligent misrepresentation;

and unfair and deceptive trade practices in violation of New
Hampshire's Consumer Protection Act.


    Pending before the court is Vaughn's motion for summary
judgment on all claims.  The School District objects.  For the
reasons discussed, Vaughn's motion is granted in part, and
denied in part.


### Standard of Review

    When ruling on a motion for summary judgment, the court
must "constru[e] the record in the light most favorable to the
non-moving party and resolv[e] all reasonable inferences in that
party's favor."  Pierce v. Cotuit Fire Dist., 741 F.3d 295, 301
(1st Cir. 2014).  Summary judgment is appropriate when the
record reveals "no genuine dispute as to any material fact and
the movant is entitled to judgment as a matter of law." Fed. R.
Civ. P. 56(a).  In this context, "[a]n issue is 'genuine' if it
can be resolved in favor of either party, and a fact is
'material' if it has the potential of affecting the outcome of
the case."  Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206,
215 (1st Cir. 2016) (citations and internal punctuation
omitted).  Nevertheless, if the non-moving party's "evidence is
merely colorable, or is not significantly probative," no genuine
dispute as to a material fact has been proved, and "summary

judgment may be granted." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986) (citations omitted).  In other words, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." <u>Perez v. Lorraine Enterprises, Inc.</u>, 769 F.3d 23, 29-30 (1st Cir. 2014).

The key, then, to defeating a properly supported motion for summary judgment is the non-movant's ability to support his or her claims concerning disputed material facts with <u>evidence</u> that conflicts with that proffered by the moving party. <u>See generally</u> Fed. R. Civ. P. 56(c).  It naturally follows that while a reviewing court must take into account all properly documented facts, it may ignore a party's bald assertions, speculation, and unsupported conclusions. <u>See</u> <u>Serapion v. Martinez</u>, 119 F.3d 982, 987 (1st Cir. 1997). <u>See also</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**Background**

In 2009-10, the School District faced a difficult decision, with serious financial consequences.  It had to either renovate an existing elementary school that no longer complied with state building codes, fire safety codes, and educational requirements, or construct an entirely new school.  In August of 2010, Scott Vaughn, a local architect, presented a proposal to a special meeting of the School District.  He assured the District that he could both design and construct a 28,500 square foot elementary school in ten months, for less than $4.7 million.  See Minutes of August 23 School District Meeting (document no. 48-9); Vaughn PowerPoint Presentation (August 23, 2010) (document no. 46-10).  Relying upon those representations, district voters approved a special warrant article authorizing the District to raise and appropriate the necessary tax revenue to cover the $4.7 million cost.  Three weeks later, the District retained the defendants, Scott Vaughn and Vaughn Associates, to act as both project architect and construction manager.

The "Architectural Services Contract" between the parties provided that, "[a]s approved on 23 August 2010, the maximum budget for the total project cost is 4.7 million."  Architectural Services Contract (document no. 48-10) at section 1.1.7.  Under the contract's terms, construction was to begin in

4

April of 2011, and be completed by May of 2012.  Id. at section
1.2.  But, construction did not begin until approximately eight
months later than anticipated.  The project encountered numerous
delays from the start, including two stop-work orders issued by
the State Fire Marshal (due to defendants' failure to timely
provide copies of constructions plans).  By June of 2011, the
final building design had been amended to include an additional
6,500 square feet (for a total of approximately 35,000 square
feet), along with other substantive modifications to the
original design.  Nevertheless, Vaughn continued to tell the
District that, "[b]ased upon meetings with vendors and
contractors it appears that the construction cost target for the
total Project of $4,700,000 is achievable."  Unity Elementary
School - Progress Report from Vaughn Associates (Aug. 15, 2011)
(document no. 48-16) at 3.

Eventually, due to the numerous delays in completing the
project, the District had to send its elementary students to
Claremont for the 2013-2014 school year.  And, because the
building was still not enclosed by January of 2013, it sustained
damage from exposure to the elements.  Similar problems were
encountered the following winter when, in December of 2013, the
building was not properly heated.  Damage was sustained to the
foundation, pipes, and drains.  Apparently, the District had to

enlist volunteers from the town to properly secure the building against further damage.  See, e.g., Exhibit Y to Plaintiff's Memorandum, Minutes of Unity School Board of Education (January 14, 2014) (document no. 48-28), at 2.

In January of 2014, after construction had slowed significantly and costs had risen substantially, Vaughn Associates resigned as construction manager and terminated its architectural services contract with the District.  The School District then hired Trumball-Nelson to act as the new construction project manager and, soon thereafter, the District retained Banwell Architects to provide architectural and design services necessary to complete the project.  The project was not finished until two years after the original contract completion date, and the total project cost nearly doubled, to $9.18 million.  This litigation ensued.

## Discussion

The thrust of Vaughn's argument in support of summary judgment is that the School District cannot prove that it sustained any damages as a proximate result of Vaughn's alleged misfeasance.  In short, says Vaughn, "the fact that the New School ultimately cost $9.165 million to construct . . . does not indicate that the [School District] paid more than it

reasonably should have to construct the New School or that
[Vaughn] was negligent in estimating the cost of a 34,827 s.f.
school building." Defendants' Memorandum (document no. 46-1) at
13. Moreover, says Vaughn (without pointing to record support),
the District "approved all of the design changes which increased
the costs of the New School." Id. Consequently, Vaughn claims
the District has suffered no cognizable harm. See, e.g.,
Defendants' Memorandum at 15 ("[T]he fact that the total cost of
the New School falls within the range identified by [the
District's] own expert indicates that the [District] did not
suffer any pecuniary loss as a result of any alleged conduct by
[Vaughn] because the Project was completed for a reasonable
cost.") (emphasis supplied). In other words, Vaughn argues that
the District got roughly what it paid for: a $9.165 million
elementary school that even the District's own expert believes
would cost about $8.094 million to construct (Vaughn apparently
dismisses the $1.071 million discrepancy between the actual
costs of construction and plaintiff's expert assessment of what
the as-built school should have reasonably cost).

    Vaughn's argument, of course, ignores the fact that it
repeatedly assured the District that the school could be
constructed for approximately half its final actual cost -
making representations that induced the voters to approve a $4.7

million bond and prompted the District to enter into the two contracts with Vaughn (and caused the District to abandon plans to renovate the existing elementary school).  And, although it claims the District "approved all of the design changes which increased the cost of the New School," Defendants' Memorandum at 13, Vaughn has pointed to only a single change order executed by the District that purportedly increased the cost of completing the project, id. at 7.[1]

Other so-called "approvals" by the School District to design changes appear to have been accompanied by assurances from Vaughn that the original maximum budget of $4.7 million would not be affected.  See, e.g., Vaughn Associates School Progress Report (Aug. 15, 2011) (document no. 48-16) at 3 (noting substantial changes to the original plan, but representing that "the construction cost target for the total Project of $4,700,000.00 is achievable."); Vaughn Associates

---

[1]    Plaintiffs deny that the "change order" cited by Vaughn (augmenting the contract with Osgood Construction from approximately $600,000 to $1.7 million) caused an increase in the project's $4.7 million budget.  Pointing to Defendants' Answers to Interrogatories, the District notes that "this change order was always contemplated as part of the total project and was already included in the $4.7 million budget."  Plaintiff's Memorandum at 13 n.2.  See also Exhibit Q to Plaintiff's Memorandum, Defendants' Answers to Interrogatories (document no. 48-20) ("At all times the original value of Osgood's work was $1,719,850.").  At a minimum, the effect on the budget of that change order would seem to be genuinely disputed.

School Progress Report (Dec. 14, 2011) (document no. 48-12) at 4 (noting the addition of approximately $50,000 in costs and 5,000 square feet to the original design, but representing that Vaughn would absorb those costs and that "the net effect of the decision to absorb this expense is to convert [Vaughn's contract] from a percentage contract to a fixed price services agreement."); Id. at 6 (noting that, despite unanticipated additional costs associated with site work, "the money we saved on steel subsidized the site work and maintained the budget for the School) (emphasis supplied).  So, even as late as August of 2011, with plans for a 35,000 square foot building and the need for additional site work, Vaughn was still representing to the District that the project would be completed for $4.7 million and in time for the 2012-2013 academic year.  Id., at 10-11.

        In light of the foregoing, it should come as no surprise that, after Vaughn left the project, the District was disappointed to learn that the final cost to complete the school would exceed $9 million.

I.   Professional Negligence.

        In order to prevail on its negligence/malpractice claim, the District must demonstrate that it had a professional relationship with Vaughn; that Vaughn breached its duty to

exercise reasonable professional care, skill, and knowledge in

providing architectural services; and that Vaughn's breach of

the requisite standard of care proximately caused harm to the

District.  See generally Yager v. Clauson, 169 N.H. 1, 5 (2016).

See also Kellogg v. Pizza Oven, Inc., 157 Colo. 295, 298-99, 402

P.2d 633, 635 (1965) ("An architect who substantially

underestimates, through lack of skill and care, the cost of a

proposed structure, which representation is relied upon by the

employer in entering in the contract and proceeding with

construction, may not only forfeit his right to compensation,

but may become liable to his employer for damages.") (citations

omitted).  And, as the New Hampshire Superior Court has

recognized:

> While conceptually difficult to explain, New Hampshire
> courts have also recognized that independent, extra-
> contractual duties of care exist in actions alleging
> professional negligence.  See Schaefer v. Indymac
> Mrtg. Servs., 731 F.3d 98, 104 n.5 (1st Cir. 2013)
> (noting that New Hampshire recognizes an exception
> applying to "malpractice-like claims based on the
> breach of extra-contractual duties arising from the
> qualifications of licensed professionals").  This
> principle is commonly referred to as the professional
> negligence exception to the economic loss doctrine.
> Sherman v. John Brown Ins. Agency, 38 F. Supp. 3d 658,
> 663 (W.D. Pa. 2014).  The New Hampshire Supreme Court
> has held that legal malpractice cases may implicate
> both tort and breach of contract claims where the tort
> claim is based on breach of a professional standard of
> care.  Wong v. Ekberg, 148 N.H. 369, 375 (2002).
> Similarly, architects and contractors have extra-
> contractual duties to design and construct in
> accordance with their respective professional

standards of care.  See Bruzga v. PMR Architects,
P.C., 141 N.H. 756, 759 (1997) (recognizing that
"architects and contractors have a duty to design and
construct safe structures"); Blanchard Pointe Condo.
Owners Ass'n v. Bowers Landing of Merrimack Dev. Grp.,
Merrimack County Superior Ct., No. 217-2010-CV-5003
(Jan. 13, 2011) (Order, McNamara, J.) (imposing an
actionable duty of care on an architect because
architects as professionals owe extra-contractual
duties to those whom the architect may reasonably
foresee suffering damages as a result of the
architect's negligent design).

Penta Corp. v. Town of Newport, 2015 WL 11182532 at *6 (N.H.

Super. Nov. 20, 2015).


    In support of its claim that Vaughn breached various

professional duties owed to it, the District says (with support

from its expert) that Vaughn neglected to monitor and manage

changes to the design proposal and neglected to keep costs below

the well-established maximum budget of $4.7 million.  According

to the District, had Vaughn carried out its obligations in a

professional manner, it would have apprised the District of

incremental cost increases, thereby allowing the District to

make informed decisions about how best to control those costs.

Instead, says the District, Vaughn not only failed to keep it

informed, but repeatedly assured it that, despite substantial

changes and unforeseen expenses, the school could and would be

constructed within the $4.7 million budget.

Additionally, says the District, numerous designs that Vaughn presented to it were deficient and failed to meet applicable educational and safety regulations - regulatory requirements about which any licensed architect (particularly one holding himself out as capable of designing an elementary school) should have been fully aware.  By way of example, Vaughn's initial plans did not comply with the State Department of Education's minimum requirements for classroom size.  And, substantial delays were caused by Vaughn's failure to provide code-compliant plans to the State Fire Marshal in a timely way (which resulted in two separate "stop work" orders issued by the Fire Marshal).  See generally Letter of State Fire Marshal (June 5, 2012) (document no. 48-21) ("On December 14, 2011, I was told by Scott Vaughn, the project architect, that plans would be submitted by the end of the December.  No plans were submitted until early March 2012.  The plans that were submitted were for [only] footings and foundation.  These plans were reviewed and architectural plans were again requested.  As of today, I still have not received any architectural plans. . . .  If the plans are not received at the State Fire Marshal's Office by June 18, 2012, I will issue a stop work order for the Unity School project.").  See also Stop Work Order (June 20, 2012) (document no. 48-26); Second Stop Work Order (July 12, 2013) (document no. 48-27); Fire Marshal Response to Request for Variance, Allowing

Existing Elementary School to Remain Open (July 3, 2012) ("The project delays that have brought this request about solely rest with the architect of record responsible for providing code compliant plans and coordination of construction in accordance with the adopted building and fire codes.").

And, of course, delays associated with remedying those design defects added to the project's costs.  But, according to the School District's expert, all of those issues could have been avoided if Vaughn had simply consulted with the appropriate agencies (to ensure that the building plans met all applicable state and federal standards) prior to beginning construction.

> Before starting construction, it is a requirement of the State to send your school plans to the State Fire Marshal, State Department of Health (for the kitchen) and the State Department of Education for review and approval.
>
> Opinion.  It does not appear as though Vaughn set up any review meetings and he did not get State Fire Marshal approval before they started construction. There were several major codes issues on standard code requirements items for any commercial project including: fire rated stair design, code compliant egresses, and ADA compliance.  Many of the code violations that were in Vaughn's designs were avoidable violations.  An architect must be and should be familiar with these code requirements as architects have to deal with them on a regular basis for most projects and it's part of their license.

Expert Report of Ingrid Moulton Nichols, AIA, Exhibit P to
Plaintiff's Memorandum (document no. 48-19), at 9.


     For its part, Vaughn asserts that it is entitled to summary
judgment on the District's negligence claim because "there is no
genuine issue of material fact that [Vaughn's] conduct did not
cause the [School District] damages."  Defendants' Memorandum at
11.  The court disagrees.


     While the full extent of recoverable damages incurred may
be complicated to prove, if the facts are as they appear to be
(based upon the District's submissions), then, at minimum,
Vaughn's alleged negligence and concomitant delays in completing
the school would likely entitle the School District to recover
some or all of the professional fees it paid to Vaughn - fees
that totaled more than $420,000.  The District would also likely
be able to recover costs associated with bringing Vaughn's
(allegedly) negligently-designed plans into compliance with all
state and federal building, educational, health, and fire codes.
Finally, as Vaughn seems to concede, the District's expert has
opined that the cost to construct the as-built elementary school
should have totaled around $8.1 million.  And yet, it cost more
than $9.1 million to construct - additional costs the District
ascribes to Vaughn's negligent design, its failure to take into

account applicable building, fire, and educational codes, and
its negligent management of the construction.


On this record, Vaughn's contention that the District
suffered no cognizable damage as a result of its alleged
negligence is unsupported.  Vaughn has failed to demonstrate
that there are no genuinely disputed issues of material fact,
nor has it shown that it is entitled to judgment as a matter of
law.  Accordingly, defendants' motion for summary judgment on
Count I ("Professional Negligence") is denied.


II.  Negligent Misrepresentation.

For largely the same reasons, defendants' motion for
summary judgment on Count III ("Negligent Misrepresentation") is
also denied.  Vaughn has failed to demonstrate that, as a matter
of law, the Unity School District cannot prevail on its claim
that Vaughn (repeatedly) negligently misrepresented that the
elementary school could be constructed for no more than $4.7
million.  For example, the District's expert has opined that a
reasonable estimate for a typical 28,000 square foot elementary
school is at least $2 million more than Vaughn's promised budget
of $4.7 million – a representation upon which taxpayers of the
District relied when they approved the bond in August of 2010,
and upon which the District relied in executing the design and

15

construction management contracts (and when it decided not to
pursue a plan to renovate the existing elementary school).
Moreover, even after the original plan was expanded to encompass
approximately 35,000 square feet, Vaughn continued to represent
that the school could still be constructed within the original
budget, see Vaughn Report (December 14, 2011) (document no. 48-
12), while plaintiff's expert has opined that a reasonable
architect would or should know that such a school would cost in
excess of $8 million to construct, see Expert Report of Ingrid
Moulton Nichols, AIA, at 5-6.


        Because Vaughn has not responded with expert evidence of
its own, the figures and opinions of the District's expert are,
at least at this juncture, unrebutted.  And, those opinions
certainly suggest that, at a minimum, Vaughn was negligent in
repeatedly representing that the school - with all necessary
modifications to the original design - could still be
constructed within the original budget of $4.1 million.


III. Breach of Contract.
        In support of its breach of contract claim, the District
alleges (again, with support from its expert) that Vaughn
breached one or more of the following contractual obligations:

16

1.  Vaughn's obligation to contact all governmental authorities necessary to obtain required approvals of the construction plans, and respond to applicable design requirements imposed by those governmental authorities (Architectural Services Contract, § 3.1.5);

2.  Vaughn's obligation to notify the District of any adjustments to the cost of construction and secure its approval to any such adjustments (Architectural Services Contract, § 3.3.3);

3.  Vaughn's obligation to prepare change orders and construction change directives for the District's approval should any adjustments to the Contract Sum ($4.7 million) become necessary (Architectural Services Contract, § 3.6.5.1); and

4.  Vaughn's obligation to notify the District (and make appropriate recommendations) any time the architect's estimate of the cost to complete the project exceeds the established budget (Architectural Services Contract, at § 6.5).

Additionally, the School District asserts that Vaughn breached its contractual obligation to "perform its services consistent with the professional skill and care ordinarily provided by architects practicing in the same or similar locality, under the same or similar circumstances," Architectural Services Contract, at § 2.2 - essentially the same claim it advances in its negligence count.

In response, Vaughn generally denies that it breached any of its contractual obligations.  And, as it did with respect to the District's negligence claims, it again asserts that the

District cannot demonstrate that it suffered any damages.  See
Defendants' Memorandum at 15 ("[T]he [Unity School District]
cannot show that it suffered damages arising out of the
Agreement because, even its own expert concludes that the New
School as it was actually built could not have been constructed
for less than approximately $8.1 million.").  Again, however,
Vaughn seems to ignore the fact that the school, as actually
constructed, cost the District approximately $9.18 million.
Standing alone, that discrepancy suggests that the District may
have paid more than $1 million too much for the school as
actually constructed.

On this record, the court cannot conclude that Vaughn is,
as a matter of law, entitled to judgment on the School
District's breach of contract claims.  Accordingly, its motion
for summary judgment on Count II is denied.

IV.  Unfair Trade Practices.

Finally, Vaughn moves for summary judgment as to the
District's claim that its conduct violated New Hampshire's
consumer protection statute, N.H. Rev. Stat. Ann. ("RSA") ch.
358-A.  New Hampshire's Consumer Protection Act makes it
"unlawful for any person to use any unfair method of competition
or any unfair or deceptive act or practice in the conduct of any

trade or commerce within the state." RSA 358-A:2.  The Act
prohibits seventeen enumerated business practices, see RSA 358-
A:2, I-XVII, as well as any other unfair or deceptive practices
that "attain a level of rascality that would raise an eyebrow of
someone inured to the rough and tumble of the world of
commerce." Barrows v. Boles, 141 N.H. 382, 390 (1996)
(citations omitted).  Here, although the District does not
identify conduct on Vaughn's part that ran afoul of any of the
statute's specifically prohibited practices, it alleges that
Vaughn's conduct generally "rises to the level of rascality
[from] which the Consumer Protection Act is intended to protect
consumers." Defendants' Memorandum at 22.  The court disagrees.

     In support of its view that Vaughn's conduct was
sufficiently egregious to be properly viewed as reaching an
actionable level of rascality, the District says:

> This is not an ordinary breach of contract claim.
> This is not a case where the District is in the
> business of contracting for the construction of
> buildings[.]  [T]his is a case where the District
> trusted the Defendants' purported expertise and was
> lured into contracts with the Defendants to complete
> the new school.  Particularly once the old school was
> demolished, the District was in a precarious position
> to keep funding the new school to complete it,
> something the Defendants were well aware of and took
> advantage of by seeking more funds to keep the project
> going.  Just as the [New Hampshire Supreme] Court
> concluded in Milford, "it would be harmful for
> commerce in New Hampshire to allow such unethical and

19

unscrupulous activity to occur."  The Defendants'
conduct also caused "substantial injury" to the
District, comprised of tax payers in a poor community
who were faced with funding a $9 million project that
should have only cost $4.7 million.  The facts
demonstrate, therefore, that the Defendants' conduct
does violate the CPA.

Plaintiff's Memorandum, at 23 (citations omitted).

Contrary to the District's position, however, this appears
to be a fairly typical case involving a construction project
gone awry.  To be sure, there is evidence in the record to
support the District's negligence and breach of contract claims.
But, as the District acknowledges, the New Hampshire Supreme
Court has made clear that, "[a]n ordinary breach of contract
claim does not present an occasion for the remedies under the
Consumer Protection Act."  Barrows, 141 N.H. at 390.  And, the
District has not pointed to evidence in the record from which a
reasonable jury might plausibly conclude that Vaughn sought to
defraud the District or that its conduct was sufficiently
egregious to warrant the conclusion that it rose to an
actionable level of "rascality."  For example, the School
District has not pointed to any evidence suggesting that Vaughn
knew the school could not be completed for $4.7 million when it
made its original proposal, or that it somehow leveraged the
District's "precarious position" to extract from it additional
fees.  Instead, the record (as it presently stands) paints a

picture of a well-intentioned architect/construction manager that got involved in a project that was beyond its capabilities, negligently failed to incorporate state-mandated elements into its design of the school, and neglected to respond to state officials in a timely manner - all of which undoubtedly caused or contributed to substantial delays and sizeable cost increases.  But, mere negligence, breach of contract, or even professional incompetence - at least in this context - does not rise to a "level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." Barrows, 141 N.H. at 390.  See also Orion Seafood Int'l, Inc. v. Supreme Grp. B.V., No. 11-CV-562-SM, 2012 WL 3765172, at *5 (D.N.H. Aug. 29, 2012); Wentworth-Douglass Hosp. v. Young & Novis Prof'l Ass'n, No. 10-CV-120-SM, 2012 WL 1081172, at *4-5 (D.N.H. Mar. 30, 2012).

## Conclusion

For the foregoing reasons, Defendants' Motion for Summary Judgment (document no. 46) is granted in part and denied in part.  It is granted as to Count IV (Consumer Protection Act), but denied as to Count I (Professional Negligence), Count II (Breach of Contract), and Count III (Negligent Misrepresentation).

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

January 20, 2017

cc:  George T. Dilworth, Esq.
     Keriann Roman, Esq.
     Demetrio F. Aspiras, III, Esq.
     Kenneth B. Walton, Esq.
     Lindsey D. Smith, Esq.
     Andrew B. Livernois, Esq.