UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Unity School District,
        Plaintiff

        v.                                Case No. 15-cv-155-SM
                                          Opinion No. 2019 DNH 195
Vaughn Associates, Inc.,
and Scott Vaughn,
        Defendants

        v.

School Administrative Unit #6,
Excel Mechanical, Inc.,
Superior Walls of Hudson Valley, Inc.,
and Town of Unity,
        Third-Party Defendants


                        **O R D E R**


        In 2010, the Unity School District hired Vaughn Associates

and Scott Vaughn (collectively, "Vaughn") to design and oversee

construction of a new elementary school in Unity, New Hampshire.

The project did not proceed as the School District had

envisioned.  Construction was beset with delays and forced work

stoppages (by, for example, the state fire marshal) and costs

ballooned from the $4.7 million that Vaughn had promised to more

than $9 million.  Eventually, Vaughn's contracts with the School

District were terminated and the School District sued Vaughn for

damages.  Those claims were settled and, in April of 2017, the

School District's suit against Vaughn was dismissed, by agreement of the parties.  See Stipulation of Dismissal (document no. 100).

What remain are Vaughn's third-party claims against two subcontractors on the project: Excel Mechanical, Inc., and Superior Walls of the Hudson Valley, Inc.  Pending before the court is Excel Mechanical's motion for summary judgment, in which Excel asserts that it is entitled to judgment as a matter of law as to each of the three state law claims Vaughn advances against it.  Vaughn objects.

For the reasons discussed, Excel's motion for summary judgment is granted.

**Standard of Review**

When ruling on a motion for summary judgment, the court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  Block Island Fishing, Inc. v. Rogers, 844 F.3d 358, 360 (1st Cir. 2016) (citation omitted).  Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  In this

context, a factual dispute "is 'genuine' if the evidence of record permits a rational factfinder to resolve it in favor of either party, and 'material' if its existence or nonexistence has the potential to change the outcome of the suit." Rando v. Leonard, 826 F.3d 553, 556 (1st Cir. 2016) (citation omitted). Consequently, "[a]s to issues on which the party opposing summary judgment would bear the burden of proof at trial, that party may not simply rely on the absence of evidence but, rather, must point to definite and competent evidence showing the existence of a genuine issue of material fact." Perez v. Lorraine Enters., 769 F.3d 23, 29-30 (1st Cir. 2014). In other words, "a laundry list of possibilities and hypotheticals" and "[s]peculation about mere possibilities, without more, is not enough to stave off summary judgment." Tobin v. Fed. Express Corp., 775 F.3d 448, 451-52 (1st Cir. 2014). See generally Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

## Background

The factual background of this case has been set forth in prior orders of the court. See, e.g., Order on Third-Party Defendants' Motion to Dismiss (document no. 42); Order on Defendants' Motion for Summary Judgment (document no. 55). It need not be recounted again in detail. It is sufficient to note the following. In 2010, the Unity School District entered into

two contracts with Vaughn to design and oversee construction of a new elementary school. Construction began in late 2011. Then, in August of 2012, the Unity School District hired Excel Mechanical to perform rough and finish plumbing services. On the same date, the School District entered into a separate contract with William Knight, d/b/a LSE ("LSE"), to perform HVAC and mechanical work on the project. LSE, in turn, entered into a subcontract with Excel to provide "design drawings with engineer's stamp for both plumbing and mechanical."

The upshot of all of this is the following: Vaughn had two contracts with the Unity School District. It did not, however, have any contractual relationship with Excel; Excel's contracts were with the School District itself, and with LSE. Moreover, Excel's contractual obligation to provide mechanical drawings stamped by a licensed engineer - the critical element of Vaughn's claims - ran to LSE, not Vaughn. See AIA Standard Agreement between Contractor and Subcontractor (document no. 139-7) at Article 8, and "Notes and Clarifications" to Contract (document no. 139-8) at 3.

In its third-party complaint, Vaughn alleges that it sustained compensable damages when it relied, both reasonably and to its detriment, upon allegedly false and material

misstatements made by Excel concerning the presence of an in-house mechanical engineer.  Specifically, Vaughn alleges:

> Excel represented to VAI [Vaughn] <u>that it had a mechanical engineer</u> who could complete the mechanical components of design and construction drawings.
>
> Excel did not, in fact, have a mechanical engineer who fulfilled this role.
>
> Excel's purported engineering documents were produced in house by an unregistered engineering school graduate and then stamped by a licensed engineer who was not principally responsible for production of the engineering documents.
>
> Excel knew or should have known that its representations were false when made.
>
> Excel had a duty to VAI as agent for USD to be truthful in describing the scope of its abilities.
>
> Excel made the representations in an effort to convince VAI to recommend that USD use Excel as the mechanical contractor on the project.
>
> The representations were material.
>
> <u>VAI relied on the representations of Excel in recommending their use on the project</u> and in not partnering with a separate mechanical engineer.
>
> Excel's failure to provide accurate stamped engineering drawings and/or to have a mechanical engineer on staff <u>caused significant delays and costs on the project</u> including but not limited to shutdowns from the various government agencies.
>
> The representations of Excel constitute material, intentional misrepresentations.

Third Party Complaint (document no. 8) at paras. 178-87

(emphasis supplied).  <u>See also</u> <u>id</u>. at paras. 76-78.

According to Vaughn, Excel's allegedly false and material misstatements about having an in-house mechanical engineer prompted Vaughn to recommend to the School District (and/or LSE) that it contract with Excel, contributed to delays in completing the project, and caused "reputational damages" to Vaughn, which ultimately contributed to the School District's decision to terminate Vaughn as the project's architect and construction manager.  See, e.g., Deposition of Scott Vaughn (document no. 139-3) at 197 (alleging that "Excel's delay and this issue with the engineer caused delays on the project and costs increased."); id. at 197-98 ("What specifically relates here and why they [Excel] are a piece of the puzzle is that their nonperformance and failure to perform directly impacted the credibility of Vaughn Associates, and the credibility of Vaughn Associates was important in terms of the confidence on the project and the belief that I could get this done. . . . [T]heir failure injured my reputation.  Because it injured my reputation, I . . . it was a piece of the puzzle for why I had to withdraw as construction manager.") (emphasis supplied).

Excel denies that it ever represented to anyone that it employed or maintained an "in-house" mechanical engineer (and asserts that its lack of an in-house engineer is not material). It says all parties were aware that its mechanical drawings

would be (and, indeed, were) stamped by a licensed mechanical engineer with whom Excel worked, but did not directly employ. As evidence of Vaughn's knowledge of that fact, Excel points to a written change order, submitted by Excel (and accepted and paid by Vaughn), for fees Excel incurred when the outside engineer reviewed and stamped project drawings. See Exhibit C to Affidavit of William Souza, "Change Order 8" (document no. 139-9) ($6,120 related to "Mechanical Engineering Costs").

Moreover, and critical to this proceeding, Excel's subcontract with LSE did not require Excel to use an "in-house" engineer. Rather it provided that Excel would supply "design drawing[s] with engineer's stamp for both plumbing and mechanical." AIA Standard Agreement between Contractor and Subcontractor (document no. 139-7) at Article 8, and "Notes and Clarifications" to Contract (document no. 139-8) at 3. There is no dispute that Excel complied with those requirements of its contract with LSE.

But, even assuming the truth of Vaughn's claim about alleged misrepresentations, Excel says Vaughn sustained no compensable injuries from its use of an outside engineer. First, Vaughn has pointed to no evidence linking Excel's conduct or alleged misrepresentations to an actual delay in the project.

That the project suffered numerous delays is undisputed and
undeniable. That Excel's lack of an in-house engineer
proximately caused any of those delays is little more than
unsupported speculation by Scott Vaughn. Moreover, if any party
might legitimately complain about damages resulting from delays
allegedly caused by Excel's failure to employ an in-house
engineer, it would be the School District (the project owner)
or, perhaps, LSE (the HVAC contractor with which Excel had
subcontracted and promised to provide stamped drawings). Yet,
LSE never sued Excel or complained about its lack of an in-house
engineer. Nor did the School District. In fact, when the
School District hired a new project manager to replace Vaughn,
it retained Excel and, in fact, <u>expanded</u> the scope of work to be
provided by Excel. Plainly, then, the School District was
neither dissatisfied with Excel's work nor, it would seem, did
it blame Excel for any of the numerous and substantial delays
the project sustained while Vaughn was project manager.

Indeed, Scott Vaughn testified that, "The plumbing drawings
[prepared by Excel] were generally okay and workable. And in
terms of craftsmanship, Excel's actual execution of the plumbing
work and the mechanical work was generally fine. It passed
inspection. People were happy with it. And they made good
contributions to buildability and coordination, those kinds of

things." Deposition of Scott Vaughn (document no. 139-3) at
193-94. Although it is far from clear, it would seem that
Vaughn complains only about the HVAC work Excel performed under
its subcontract with LSE (again - work that did not require use
of an in-house engineer), not the work Excel performed under its
contract with the School District. Of course, Scott Vaughn's
description of Excel's "mechanical work" as "fine" undermines
that claim somewhat. Further undermining Vaughn's assertion
that Excel was responsible for (or contributed to) costly
project delays is a letter dated December 22, 2013, in which
Vaughn wrote:

> It is the belief of Vaughn Associates, Inc. ("VA") in
> its capacity as Construction Manager for the work of
> the new Unity Elementary School ("UES") that the best
> path forward for all parties to the HVAC work . . . is
> [that] LSE should assign its sub-contract with Excel
> Mechanical, Inc. ("Excel") to the Owner [and] Excel
> should accept that assignment without contest and
> become the prime contractor for the HVAC work.

Letter from Vaughn Associates (document no. 139-10) at 1
(emphasis supplied). It is entirely unclear why Vaughn would
recommend that Excel "become the prime contractor for the HVAC
work" if, as Vaughn now contends, Excel failed to properly
perform under its contracts and/or contributed to damaging and
material delays in completing the project.

**Discussion**

In its third-party complaint, Vaughn advances three state law claims against Excel: (1) intentional misrepresentation/ fraud (Count 7); contribution, pursuant to N.H. Rev. Stat. Ann. ("RSA") 507:7-f; and (3) common law indemnity. None has merit.

I.   Intentional Misrepresentation.

Under New Hampshire law, to prevail on a claim for intentional misrepresentation or fraud, a plaintiff must establish: (1) that the defendant made a factual misrepresentation; (2) with knowledge of its falsity or with a conscious indifference to its truth; (3) with the intention that the plaintiff rely on that misrepresentation; (4) that the plaintiff did justifiably rely, to his or her detriment, upon that misrepresentation; and (5) that the plaintiff suffered compensable damages as a consequence. See, e.g., Ridlon v. N.H. Bureau of Secs. Regulation, __ N.H. __, 214 A.3d 1196, 1203 (N.H. July 24, 2019); Patch v. Arsenault, 139 N.H. 313, 319 (1995). See also Nichols v. Gen. Motors Corp., No. 99-C-566, 1999 WL 33292839, at *4 (N.H. Super. Dec. 13, 1999). Here, Vaughn's fraud claim falls substantially short on several of those elements.

First, Vaughn has identified no credible and admissible
evidence to support its claim that Excel actually represented to
Vaughn that it employed an in-house licensed engineer.  As the
source of that alleged misrepresentation, Vaughn points to
Excel's work proposal (document no. 139-8), which was
incorporated into Excel's contract with LSE.  See Vaughn's
Opposition Memorandum (document no. 143-1) at 8-9.  See also
Affidavit of Scott Vaughn (document no. 143-2) at para. 10 ("The
Excel Proposal includes a representation that Excel employs a
registered engineer who can prepare and stamp drawings for the
Project.").  That statement is demonstrably false.  As noted
above, Excel's proposal does not make any representations about
employing an in-house engineer.  It states that Excel will
provide mechanical drawings that bear a licensed engineer's
stamp.  See Excel's Work Proposal (document no. 139-8) at 3
("Design drawing with engineer's stamp for both plumbing and
mechanical are included in this proposal.").[1]

---

[1]     Excel's owner, William Souza, testified that "we were
requested [by Scott Vaughn] to add the engineer's stamp into our
proposal.  So the engineer's stamp for both the plumbing and
mechanical came under Excel's scope of work."  Deposition of
William Souza (document no. 143-3) at 29.  See also Id. at 20.
He also testified that Scott Vaughn instructed him to add the
cost associated with obtaining those engineering stamps to its
anticipated budget.  Id. at 30.  Souza also testified that,
"Excel Mechanical does not have a registered engineer to stamp a
set of drawings, and you will notice [on the proposal (document
no. 139-8), at 3] that I put that on there as bold."  Id.  Souza
then explained that, when needed, Excel utilized an outside

Moreover, Vaughn points to no evidence that might support
even an inference that Excel intended Vaughn to rely upon such
an alleged misstatement (or even why Vaughn believes Excel would
have misrepresented such a seemingly minor matter) - after all,
a professional stamp is required, but whether the stamping
engineer is an employee or a consultant would seem entirely
beside the point.  Either circumstances might cause some delay
depending on a variety of factors, and either circumstance could
just as easily prove more, not less, timely.  Nor is there
evidence that Vaughn relied to its detriment upon such an
alleged misstatement or that <u>Vaughn</u> suffered any compensable
damages as a result of such alleged reliance upon the alleged
misstatement.

Vaughn's intentional misrepresentation claim is, at best,
vague and ill-defined - seemingly, deliberately so.  And, the
"evidence" upon which Vaughn relies in support of that claim is
little more than "conclusory allegations, improbable inferences,
and unsupported speculation" set forth in Scott Vaughn's
deposition and affidavit.  <u>Am. Steel Erectors, Inc. v. Local</u>
<u>Union No. 7, Int'l Ass'n of Bridge, Structural, Ornamental &</u>
<u>Reinforcing Iron Workers</u>, 536 F.3d 68, 75 (1st Cir. 2008).  It

_____

engineering firm to stamp drawings, in exchange for a
professional fee.  <u>Id</u>. at 30.

is insufficient to stave off Excel's motion for summary judgment and no reasonable trier-of-fact could plausibly credit it as true.  See generally Scott v. Harris, 550 U.S. 372, 380 (U.S. 2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

II.   Statutory Contribution and Common Law Indemnity.

As the court noted in a prior order (document no. 42), the New Hampshire Supreme Court has explained the distinction between contribution and indemnification as follows:

> [I]ndemnity is distinguished from contribution because whereas indemnity shifts the entire burden of loss from one tortfeasor who has been compelled to pay it, to another whose act of negligence is the primary cause of the injured party's harm, contribution is partial payment made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party.

Gray v. Leisure Life Indus., 165 N.H. 324, 330 (2013) (citations and internal punctuation omitted) (emphasis supplied).

A.     Statutory Contribution - RSA 507:7-f.

In Count 8 of its third-party complaint, Vaughn alleges
that, "to the extent that VAI [Vaughn] is liable to USD [the
Unity School District] under a theory of negligence or any other
tort-based theory of recovery, . . . Excel is liable to VAI for
its negligence in causing or contributing to the damages of USD
in accordance with RSA 507:7-f."  Id. at para. 190.  That
statute provides that, subject to certain conditions, "a right
of contribution exists between or among 2 or more persons who
are jointly and severally liable upon the same indivisible
claim, or otherwise liable for the same injury, death or harm."
(emphasis supplied).  But, "contribution is not available to a
person who enters into a settlement with a claimant unless the
settlement extinguishes the liability of the person from whom
contribution is sought, and then only to the extent that the
amount paid in settlement was reasonable."  RSA 507:7-f, II.


Vaughn's claim for statutory contribution is without merit.
First, Vaughn has failed to demonstrate that, as part of the
settlement agreement between Vaughn and the Unity School
District, the School District released Excel from any claim on
which Vaughn paid a settlement amount.  The settlement agreement
between Vaughn and the Unity School District plainly contains a
mutual release of claims.  See Mediated Settlement Agreement and

14

Mutual General Release (document no. 139-4) at 3-4. The
agreement also contains a hand-written addendum that purports to
release Superior Walls of Hudson Valley from any claims that the
School District might have against it. See Id. at 6.
Critically, however, there is no similar release of the School
District's claims against Excel. To be sure, Vaughn's
settlement with the School District would have reduced the
amount of any judgment the School District might have
subsequently obtained against Excel related to claims as to
which Vaughn and Excel shared liability. But, that settlement
did not extinguish Excel's liability to the School District on
those (or any other) claims. See RSA 507:7-f, II. See also
Leisure Life Indus., 165 N.H. at 331 ("Although, as the
plaintiffs point out, their settlement with Orvis would have
reduced the amount of any judgment against the defendants by the
amount of consideration paid, it did not extinguish the
defendants' potential liability to the plaintiffs. Since
Orvis's settlement did not extinguish the defendants' liability,
there was no basis for Orvis to obtain indemnity from the
defendants. The defendants were therefore entitled to judgment,
as a matter of law, on the indemnity claim.") (citing RSA 507:7-
h). Vaughn's failure to obtain from the School District a
release of all its claims against Excel is fatal to Vaughn's
statutory contribution claim against Excel.

Additionally, even if it were possible to construe the language of the settlement agreement as some sort of implied release of the School District's claims against Excel, Vaughn has failed to demonstrate that Excel owed and breached any cognizable common law duties to the School District that proximately caused the injuries for which the School District sought (and obtained) compensation from Vaughn. In other words, Vaughn has failed to show that Excel is a <u>joint</u> <u>tortfeasor</u> that should be held to account for its proportionate share of Vaughn's liability to the School District. <u>See Leisure Life</u> <u>Indus.</u>, 165 N.H. at 330 ("contribution is partial payment made by each or any of jointly or severally liable tortfeasors <u>who</u> <u>share a common liability</u> to an injured party.") (emphasis supplied). <u>See also</u> Restatement (Third) Torts: Apportionment Liab. § 23 (Am. Law. Inst. 2000) (noting that the party seeking contribution must demonstrate that the party from whom it seeks contribution proximately caused the plaintiff's injuries).

At this point, it is probably worth revisiting the School District's original complaint against Vaughn. In it, the School District advanced two tort claims against Vaughn: professional malpractice (negligence) and negligent misrepresentation (fraudulent inducement to enter the contracts with Vaughn). So, to prevail on its statutory contribution claim, Vaughn must

point to both legal and factual support for its assertion that Excel shares liability as a joint tortfeasor - that is, for having either fraudulently induced the School District to enter its contracts with Vaughn (contracts that were executed well before Excel was ever involved in the project) or for having committed architectural malpractice.

Given the evidence of record, it is difficult to conceive of how Excel could have possibly been a joint tortfeasor with respect to either of those torts. But, more importantly, Vaughn has failed to point to admissible evidence supportive of such a theory. Consequently, it's claim for statutory contribution necessarily fails.

B.   Common Law Indemnity.

In Count 9 of its third-party complaint, Vaughn alleges that:

> Excel knew or should have known that VAI [Vaughn] would rely on Excel's work (as represented to VAI) in completing its design of the new Unity School and during construction.
>
> Excel performed its work negligently and with total disregard for project timelines.
>
> Excel's failures on the project caused damages to USD and/or VAI.

> VAI should be entitled to recover its damages from
> Excel under a theory of common law indemnity.

Third-Party Complaint at paras. 192-95.  As noted above,
"indemnity shifts the entire burden of loss from one tortfeasor
who has been compelled to pay it, to another whose act of
negligence is the primary cause of the injured party's harm."
Leisure Life Indus., 165 N.H. at 330 (emphasis supplied).  As
the court previously observed, in dismissing Vaughn's indemnity
claims against SAU #6, see Order on Third-Party Defendants'
Motion to Dismiss (document no. 42), New Hampshire common law
recognizes three distinct types of indemnity: derivative or
imputed by law, express, and implied.  See Leisure Life Indus.,
165 N.H. at 327.


     Vaughn has not clearly stated whether it is pursuing a
theory of implied indemnity or derivative/imputed indemnity.  To
the extent it is the former, Vaughn faces a substantial problem:
"under New Hampshire law, a right to indemnification is rarely
implied."  Johnson v. Capital Offset Co., No. 11-cv-459-JD, 2013
WL 5406619, at *8, 2013 DNH 127 (D.N.H. Sept. 25, 2013)
(citation omitted).  According to the New Hampshire Supreme
Court, "This disinclination [to infer an indemnification
obligation] reflects a simple notion founded in pragmatism and
fairness, that those who are negligent should bear

responsibility for their negligence." Dunn v. CLD Paving, Inc.,
140 N.H. 120, 123 (1995) (citation and internal punctuation
omitted).  For the same reasons discussed in this court's prior
order, Vaughn has failed to demonstrate that the facts of this
case fall within any of the limited exceptions to the general
rule barring implied indemnifications agreements.  See Order on
Third-Party Defendants' Motion to Dismiss (document no. 42) at
10-12.  See generally Leisure Life Indus., 165 N.H. at 328;
Jaswell Drill Corp. v. General Motors Corp., 129 N.H. 341, 346
(1987).


        To the extent Vaughn is pursuing Excel on derivative/
imputed theory of indemnity, that claim also fails.  That theory
of recovery is based upon "the concept that one party is
unjustly enriched at the expense of another when the other
discharges liability that should be the first party's
responsibility to pay."  Leisure Life Indus., 165 N.H. at 329
(citation omitted) (emphasis supplied).  As discussed above,
Vaughn has failed to show that Excel is the true party at fault
and should, therefore, be responsible for reimbursing Vaughn for
the sums it paid to settle the School District's claims that
Vaughn engaged in professional malpractice and/or that Vaughn
fraudulently induced the School District to enter contracts with
it.

Finally, as is the case with statutory contribution, "an indemnitee must extinguish the liability of the indemnitor[,] either by a settlement with the plaintiff that by its terms or by application of law discharges the indemnitor from liability or by satisfaction of judgment that by operation of law discharges the indemnitor." Leisure Life Indus., 165 N.H. at 329 (citation and internal punctuation omitted). The theory behind that requirement is based in equity: "the indemnitee has provided a benefit to the indemnitor by fully discharging the indemnitor's liability, making restitution appropriate." Id. Such is not the case here. As noted above, the settlement agreement between Vaughn and the School District did not, by its terms or by operation of law, extinguish all potential liability of Excel to the School District. Moreover, largely for the reasons already given, because Vaughn has conferred no benefit upon Excel (i.e., it has not paid any obligation Excel owed to the School District), it cannot seek to recover from Excel on a theory of indemnification.

## Conclusion

Vaughn's claim for intentional misrepresentation (fraud) is, for the reasons given, without merit. With regard to its contribution and indemnity claims, Vaughn has failed to show that, when it settled with the School District, it somehow

resolved claims for which Excel might be jointly liable.
Rather, Vaughn extinguished only its own liability to the School
District for architectural malpractice and fraudulent
inducement.  Having conferred no benefit upon Excel (and having
failed to obtain a release of the School District's potential
claims against Excel), Vaughn cannot recover against Excel on
either theory.


For the foregoing reasons, as well as those set out in
Excel Mechanical's comprehensive legal memorandum (document no.
139-1), the court concludes that there are no genuinely disputed
issues of material fact and, as a matter of law, Excel is
entitled to judgment.  Excel's Motion for Summary Judgment
(document no. 139) is granted.  Excel's Motion to Exclude VAI's
Experts (document no. 140) is denied as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 19, 2019

cc:  George T. Dilworth, Esq.
     Demetrio F. Aspiras, III, Esq.
     Melissa A. Hewey, Esq.
     Kenneth B. Walton, Esq.
     Lindsey D. Smith, Esq.
     Kristin Hartman, Esq.
     Michael P. Sams, Esq.

Daniel H. Conroy, Esq.
Matthew V. Burrows, Esq.
Samantha D. Elliott, Esq.
Andrew B. Livernois, Esq.