```
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Unity School District,
        Plaintiff

     v.                              Case No. 15-cv-155-SM
                                     Opinion No. 2020 DNH 128
Vaughn Associates, Inc.,
and Scott Vaughn,
        Defendants

     v.

Superior Walls of Hudson Valley, Inc.,
        Third-Party Defendant
```

**O R D E R**

After one of the third-party defendants, Superior Walls of Hudson Valley, failed to appear or file a dispositive motion, the court entered a default.  See Entry of Default (document no. 36).  Third-party plaintiffs (collectively, "Vaughn") now move the court to enter a default judgment in their favor and award them the sum of $1,441,095.96.  That motion is denied.

As this court has previously noted, "After default is entered and when the amount at issue is not a sum certain, the party must apply to the court for a default judgment.  Although a defaulting party admits the factual basis of the claims asserted against it, the defaulting party does not admit the

<u>legal sufficiency of those claims</u>.  To recover on a motion for default judgment, <u>the claimant must state a legally valid claim for relief</u>.  Therefore, before entering default judgment, the court must determine whether the admitted facts state actionable claims." <u>Bradley v. Wells Fargo Bank, N.A.</u>, No. 12-CV-127-PB, 2015 WL 12851708, at *1 (D.N.H. Dec. 21, 2015), <u>report and recommendation approved,</u> 2016 WL 7383772 (D.N.H. Jan. 13, 2016) (emphasis supplied) (citations and internal punctuation omitted).

The broader factual background to this case has been discussed numerous times in prior orders of the court and need not be recounted.  The specific factual claims Vaughn asserts against Superior Walls are set forth in paragraphs 49 through 60 of Vaughn's Third Party Complaint (document no. 8).  In short, Vaughn did not have a contract with Superior Walls.  Nevertheless, says Vaughn, Superior Walls promised to manufacture and deliver to the project a "precast foundation wall and interior wall system" at some unspecified time.  According to Vaughn, "Superior made representations to [Vaughn] that its prefabricated concrete components would be available to be used in the construction of the new Unity Elementary School in a <u>timely manner</u>."  <u>Id</u>. at para. 146 (emphasis supplied).  But, says Vaughn, in April of 2012, when it attempted to order

2

the precast walls from Superior, "Superior informed [Vaughn] that it would not be able to deliver the anticipated wall panels <u>within the time necessary for the orderly progress of the work</u>, in fact the anticipated delay was 6-12 months."  <u>Id</u>. at para. 52 (emphasis supplied).  <u>See also</u> <u>Id</u>. at paras 151-52 ("After the design was complete, [Vaughn] attempted to order Superior's prefabricated concrete components for inclusion in the new Unity Elementary School.  [Vaughn] was informed by Superior that its prefabricated concrete products would not be available for up to a year.").

Those are the factual allegations against Superior: it promised it could deliver a precast wall system in a "timely" manner, but when Vaughn went to place an order for that wall system, it learned that it would take 6-12 months to manufacture – outside of the timeframe Vaughn needed it.  Based upon those factual claims, Vaughn advanced four causes of action against Superior Walls: intentional misrepresentation; negligent misrepresentation, statutory contribution under N.H. Rev. Stat. Ann. ("RSA") 507:7-f, and implied common law indemnity.  The court has discussed those causes of action and their essential elements in detail in prior orders.  <u>See, e.g.</u>, Order on Town of Unity's Motion to Dismiss (document no. 42); Order on Excel's Motion for Summary Judgment (document no.145).  <u>See generally</u>

Gray v. Leisure Life Indus., 165 N.H. 324 (2013); Johnson v. Capital Offset Co., No. 11-CV-459-JD, 2013 WL 5406619, at *8, 2013 DNH 127 (D.N.H. Sept. 25, 2013); Dunn v. CLD Paving, Inc., 140 N.H. 120 (1995). Those discussions need not be repeated.

It is sufficient to note that Vaughn's factual claims are so vague that, had Superior Walls appeared and filed a motion to dismiss for failure to state a claim, that motion almost certainly would have been granted. Nowhere does Vaughn allege that Superior Walls promised, but failed to meet, a specific lead time for production of the wall system. Indefinite terms and phrases like "timely" and "within the time necessary" are insufficient to state a viable claim that Superior Walls promised to deliver its product by a date certain (or within so many weeks after an actual order had been placed) and then failed to honor that commitment. If, as alleged, Vaughn communicated with Superior Walls about using its product, Vaughn subsequently incorporated that product into its design plans, and Vaughn then called to place an order for that product, it is not surprising that it might take Superior Walls six months (or more) to fulfill that order. Any actual "wrongdoing" on the part of Superior Walls is entirely absent from Vaughn's narrative.

4

I.  Failure to State a Viable Claim

Vaughn has broken down its claimed damages (and corresponding theories of recovery) into three broad categories:

1. $425,000.00, representing "the amount [Vaughn's] insurance company was required to pay to resolve this lawsuit with the USD;" and

2. $908,095.96, representing "fees [Vaughn] was not paid by the Unity School District" under the contract between Vaughn and the School District; and

3. $108,000.00, representing the "6 months in which [Scott Vaughn] worked 50 hours per week to redesign the Project."

Affidavit of Scott Vaughn (document no. 149-1) at para. 3.

A.  Contribution and Indemnity.

With respect to the first category of damages – the amount paid to settle the claims advanced by the Unity School District ("USD") against Vaughn – Vaughn asserts that it is entitled to recover from Superior Walls on theories of implied common law indemnity and statutory contribution under RSA 507:7-f.  Those two theories of recovery can be quickly dispatched.

Vaughn's insurance company may have a claim for reimbursement of those sums.  But, there is no indication that Vaughn is acting on behalf of the insurance company.  Moreover,

5

and largely for the reasons set forth in the court's order discussing Vaughn's claims against Excel Mechanical (document no. 142), Vaughn's claims against Superior Walls for common law indemnity and statutory contribution fail to state the essential elements of viable claims.

According to Vaughn, it and Superior Walls are <u>joint tortfeasors with joint and several liability</u>.  Plaintiff's memorandum (document no. 149) at 3 ("Accordingly, [Vaughn] is entitled to recover from Superior Walls as a joint tortfeasor with join and several liability the $425,000 it [actually, its insurer] paid to USD <u>to extinguish USD's claims against Superior Walls</u> . . ..") (emphasis supplied).  Two facts bear noting.  First, in its complaint, Unity School District did not advance any claims against Superior Walls.  Second, there are no allegations in the Vaughn's Third Party Complaint that would support the notion that Superior Walls is a tortfeasor with respect to the School District.  Indeed, the Third Party Complaint suggests that the School District did not believe it had been harmed by Superior Walls' conduct.  <u>See</u> Third Party Complaint at para. 56-60 (alleging that Vaughn notified two different attorneys for the School District of Superior Walls' alleged conduct, yet they did nothing to "preserve the School District's rights" against Superior Walls).

6

So, even if Vaughn were permitted to recover the settlement amount on behalf of its insurer, it has failed to demonstrate (or even allege) that Superior Walls owed and breached any cognizable common law duties to the School District that proximately caused the injuries for which the School District sought (and obtained) compensation from Vaughn.  See generally Leisure Life Indus., 165 N.H. at 330 ("contribution is partial payment made by each or any of jointly or severally liable tortfeasors who share a common liability to an injured party.") (emphasis supplied).  See also Restatement (Third) Torts: Apportionment Liab. § 23 (Am. Law. Inst. 2000) (noting that the party seeking contribution (Vaughn) must demonstrate that the party from whom it seeks contribution (Superior Walls) proximately caused the plaintiff's (USD's) injuries).

This issue requires (and warrants) no further discussion. Vaughn's asserted entitlement to monies paid by its insurance company to settle claims asserted against Vaughn, under theories of either implied common law indemnity or statutory contribution, is entirely unsupported and, on this record, without merit.

B.   Negligent and Intentional Misrepresentation.

Vaughn seeks to recover the remainder of its claimed damages under theories of negligent and/or intentional misrepresentation.  While couched in nefarious terms, the allegations in the Third Party Complaint fail to adequately and plausibly allege the essential elements of claims for either negligent or intentional misrepresentation.  Even if Superior Walls did promise that it could provide its product in a "timely" manner and "within the time necessary," Vaughn's factual allegations fail to suggest that Superior Walls neglected to honor that promise, or that it negligently (or intentionally) misled Vaughn in that regard.  In the world of engineered, precast wall systems, it is entirely possible that manufacturing such a product for a project this size in 6-12 months is "timely."  Notably absent from the Third Party Complaint are allegations that Superior Walls represented to Vaughn that it could deliver its product to the worksite on or before a date certain, Vaughn reasonably relied to its detriment on those representations, and Superior Walls then failed to fulfill its promises to Vaughn.

II.   <u>No Entitlement to Damages</u>.

None of the four counts against Superior Walls in the Third Party Complaint actually states a viable cause of action.

Nevertheless, even if it were possible to find that Superior Walls is somehow liable to Vaughn, Vaughn has not adequately explained the basis for its claimed entitlement to nearly $1.5 million from Superior Walls. A non-exhaustive list of examples may illustrate the point.

Beginning with the $425,000 paid <u>by Vaughn's insurance company</u> in settlement of Unity's claims, it is entirely unclear why Vaughn believes it is entitled to that money. As noted above, there is no indication that Vaughn is acting on behalf of the insurance company. On this record, Vaughn has failed to show that it can lawfully recover that sum from Superior Walls.

Next, Vaughn claims entitlement to nearly $1 million in unpaid fees and expenses under its contract with the School District. Those claims are equally unsupported. Recall that Scott Vaughn promised the School District that he could design and oversee construction of a new elementary school that would cost taxpayers no more than $4.7 million. Ultimately, Vaughn was unable to honor that commitment. The project was beset by numerous delays and mistakes (resulting in, for example, construction halts issued by the State Fire Marshal and water/snow damage when the project was not adequately closed-in before winter). Vaughn was fired and the school was eventually

completed at a total cost of approximately $9.1 million. Vaughn now seeks – from Superior Walls – sums it claims it was entitled to receive under Vaughn's (terminated) contract with the School District. So, for example, Vaughn says that under its contract with the USD, it was entitled to 10% of the total cost of the project (up to a cap of $450,000). Of that $450,000, Vaughn says $66,800 remains unpaid and now Superior Walls is liable for that amount. Additionally, Vaughn says his contract with the School District provided him with a further 10% of the difference between $4.7 million and the actual total cost of the completed project. Because the total cost of completion ballooned to $9.1 million (as a result of Vaughn's errors and mismanagement, according to the School District), Vaughn claims entitlement to an additional percentage of that total. After various "deductions," Vaughn says that amounts to roughly $340,000. See Affidavit of Scott Vaughn (document no. 149-1) at 4.

In other words, even though the School District accused Vaughn of malpractice and breach of contract (among other things) that caused the cost of the elementary school to nearly double to $9.1 million, Vaughn claims it is entitled to receive roughly 10% percent of that total cost. And, because the School District understandably declined to make such a payment (the

contracts with Vaughn were terminated well before the project was completed), Vaughn says Superior Walls is liable to it for that sum based on theories of negligent and intentional misrepresentation.

Other sums Vaughn seeks to recover from Superior Walls include, for example, $15,000 for the "cost of used lockers from Stevens High School" (no explanation for that is given); $114,234.85 for "donated services and equipment" (apparently Vaughn wants compensation from Superior Walls for Vaughn's "donations" to the School District – again, without explanation for the basis of Superior Walls' liability); and $81,261.11 in "licensing fees" for the School District's alleged use of Vaughn construction designs.  See Exhibit A to Affidavit of Scott Vaughn at 1-2.

Vaughn's claimed entitlement to those sums from Superior Walls is inexplicable.  It is not supported either legally or factually on this record.  This project was beset by numerous delays, errors, and miscalculations – many of which Vaughn blamed on entities other than Superior Walls (i.e., the Town of Unity, the School Administrative Unit, the State Fire Marshal, Excel Mechanical, and others).  See generally Third Party Complaint.  Notably, however, the Third Party Complaint fails to

11

link Superior Walls' alleged "misstatements" to the various contract damages Vaughn claims to have sustained. Perhaps most importantly, it does not connect Superior Walls' conduct to the School District's decision to terminate its contracts with Vaughn. Absent some link between Superior Walls' allegedly wrongful conduct and the School District's decision to terminate Vaughn's contracts, it is unclear how Vaughn can recover from Superior Walls revenue it anticipated, but was denied, under those contracts.

### Conclusion

Vaughn's claimed entitlement to more than $1.4 million from Superior Walls of the Hudson Valley is insufficiently developed, explained, or documented – from both a legal and a factual standpoint. In short, Vaughn has not carried its burden of demonstrating the viability of its legal claims against Superior Walls, nor has it pointed to factual support for the damages sought.

For the foregoing reasons, Vaughn's renewed motion for default judgment against Superior Walls of the Hudson Valley (document no. 149) is denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

                                                                                    _____
                                                                                    Steven J. McAuliffe
                                                                                   United States District Judge

July 20, 2020

cc:   Counsel of Record